## John Goddard *versus* Eben S. Coe & al., *Ex'rs.*

A stipulation, that the conveyance is to be void upon payment of the sum due thereon, is one of the essential elements of a mortgage.

By a sealed instrument, signed by both parties, the plaintiff conveyed to the defendant's testate, certain timber as security for the former's indebtedness to the latter, and stipulated that, if the plaintiff paid such indebtedness according to its terms, the defendants' testate would "transfer" said timber and "whatever proceeds thereof" he might thereafter receive to the plaintiff, discharged of all claims; that, if the indebtedness was not paid as stipulated, the defendants' testate might "sell and dispose of so much of said timber as shall pay and reimburse him;" that, when paid by a sale of a portion of the timber, the defendants' testate was to "transfer to the plaintiff all the timber undisposed of, free from all claims." In trover for selling more of the timber than was necessary to discharge the plaintiff's indebtedness : — *Held*, —

1. That the contract was not a mortgage;
2. That trover would not lie;
3. That an action on the contract is the proper remedy.

On Report.

Trover, for the conversion of the plaintiff's logs by David Pingree (defendant's testate) in his lifetime. The writ was dated Jan. 6, 1862; the specifications of defence deny the plaintiff's title and also the conversion.

The plaintiff introduced a sealed instrument, executed by the plaintiff and David Pingree, dated July 24, 1861, which, after stating the several large sums of money due and owing from the plaintiff to David Pingree, for stumpage on timber cut on lands of Pingree under licenses, proceeds as follows :—

"And whereas the said timber and logs, or a large part thereof, are now situated in and upon the waters and shores of the St. John River, * * in ponds, booms or otherwise on the way to market, according to the conditions of said licenses, and whereas the said Goddard has other timber and logs, in and upon said shores and waters, in ponds, booms, or otherwise on the way to market, intermixed with the timber and logs first aforesaid, and whereas the said Goddard

has not paid said stumpages according to the conditions of said licenses, and is desirous of further time, to pay the same, and is desirous of further assuring to said Pingree, his title to the aforesaid timber and logs, and further securing the payment of said several sums of money, owed by him as aforesaid : —

"Now it is agreed, by and between the said Goddard and said Pingree, as follows, to wit : —

"1. The said Goddard, in consideration of the premises, and of the several sums of money due from him to the said Pingree, * * * * as aforesaid, hereby grants, bargains, sells, releases, transfers and delivers to the said Pingree, his executors, administrators and assigns, to his and their sole use forever, all the timber, logs and lumber belonging to him the said Goddard, * * * situated in or upon the waters or shores of said St. John river, or in the ponds or booms thereon, or in his mill, mill yard, or mill pond at Carleton, in said Province, wherever the same may be found, a schedule of which, as nearly as practicable, is annexed hereto ; and said Goddard agrees with said Pingree that he will at his own expense forthwith deliver all said timber, logs and lumber to Mark Barker, the agent of said Pingree, who is hereby authorized to take possession thereof, wherever situated, for said Pingree, and that the said Goddard will, at his own expense, and under the direction of said Barker, cause all said timber, logs and lumber to be driven to and secured at such places as said Barker shall designate for said Pingree, said Goddard and his agents and servants, at all times, holding the same, while temporarily having custody of it, for the purpose aforesaid, for said Pingree and his agent, said Barker.

"3. The said Pingree further agrees with said Goddard, that, if said Goddard shall within thirty days from the date hereof, pay to him the amount of said Goddard's indebtedness as aforesaid and his costs in this behalf, either in cash, or by the acceptance of," [certain persons named,] "on six and twelve months, payable at Suffolk Bank, in Boston,

Massachusetts, with interest added, making the same equal to cash, that then the said Pingree will transfer the aforesaid timber, logs and lumber, and whatever proceeds thereof he may hereafter receive, to said Goddard, discharged of all his, said Pingree's, claims thereon.

" 4. And it is mutually agreed between said Goddard and said Pingree that, in case the said Goddard shall not, on or before the first day of November next, pay to said Pingree the full amount of his aforesaid indebtedness, and the cost and expenses of said Pingree and his agents, except the services of said Barker, in relation to said timber, logs and lumber, then the said Pingree may sell and dispose of so much of said timber, logs and lumber, as shall pay and reimburse to him all of the same and his costs, in making said sale ; said sale to be at public auction, or by private sale, at such terms and in such quantities as said Pingree may elect, and that the said Pingree, after having fully reimbursed and paid to himself all said indebtedness, cost and charges, shall transfer to said Goddard all said timber, logs and lumber, which may remain undisposed of, free from all claims to be made by him."

The plaintiff then offered to prove that, on Nov. 6, 1861, Pingree sold at a price less than one-third their actual value, enough of the logs described in the sealed instrument, to bring the sum of $35,000, nearly $10,000 more than was actually due to him, including all expenses, and, on the same day, redelivered the balance of the logs to the plaintiff's agent, and that Pingree made the over-sale knowingly, or carelessly and recklessly.

The presiding Judge ruled that, under said agreement, when the logs were delivered to Pingree, the legal title became vested in him to secure the amount due to him from Goddard ; and that, though Pingree had no right to sell more than enough to pay the amount due to him, still, for any wrongful over-sale made by him, he was not liable in this form of action ; and a nonsuit was thereupon ordered.

The case was then reported to the full Court, with an

agreement that, if the ruling was right, the nonsuit should be confirmed.

*J. H. Drummond*, for the plaintiff.

The instrument was not an absolute sale. It was to secure and not to pay. It was a mortgage, with a power to sell enough to pay the debt, — no more. After Pingree sold enough to pay the debt, his power of sale ceased. No particular form of words is necessary to constitute a mortgage. An absolute deed from a debtor, with a separate agreement to reconvey, by the creditor, is a mortgage. 1 Hill. on Mort., 18, 34, a; *Ibid*, c. 2, § 1. Counsel also cited 2 Hill. on Mort., 278, and *infra; Parks* v. *Hall*, 2 Pick., 206; 2 Hill. on Mort., 457; *Gordon* v. *Mass. F. & M. Ins. Co.*, 2 Pick., 249.

Trover will lie for a cause growing out of a contract. *Homer* v. *Thwing*, 3 Pick., 492; *Rotch* v. *Hawes*, 12 Pick., 136. See also, *Smith* v. *Hodsdon*, 4 Tenn., 211; 2 Greenl. on Ev., 640.

*Shepley & A. A. Strout*, for the defendants, cited

*Briggs Iron Co.* v. *N. Adams Iron Co.*, 12 Cush., 114; *Burdick* v. *McLane*, 2 Denio, 170; *Plunkett* v. *M. E. Church*, 3 Cush., 561; *Hoadly* v. *McLane*, 10 Bing., 487; *Smith* v. *Hodsdon*, 4 Tenn., 211; 2 Greenl. on Ev., 640; Story on Sales, § 221.

APPLETON, C. J. — A mortgage is the conveyance of real or personal estate for the security of a debt by way of pledge, and to become void upon its payment.

The contract under seal between the plaintiff and David Pingree, dated July 24, 1861, was not nor was it intended to be a mortgage. By its terms, certain lumber, logs and timber, were conveyed by the plaintiff to said Pingree as security for the plaintiff's indebtedness to him. If the plaintiff should pay the various claims set forth in the contract according to its terms, Pingree was to "transfer the aforesaid timber, logs and lumber, and whatever proceeds thereof he

may hereafter receive, to said Goddard discharged of all his, said Pingree's, claims thereon." If the debt was not paid as stipulated, Pingree had the right to "sell and dispose of so much of said lumber, logs and timber as shall pay and re-imburse him * * * * and his costs in making said sale," &c. When paid by a sale of a portion of the logs, Pingree was to "transfer to said Goddard all said timber, logs and lumber, which may remain undisposed of, free from all claims to be made by him." There are other stipulations not material to be considered.

The title to the timber, logs and lumber, was to remain in Pingree until he should "transfer" the same to the plaintiff. The estate was not to revest in the plaintiff upon payment by him of the sums due. It was to be transferred to him. The conveyance was not to be void upon payment of the sum due, which is one of the essential elements of a mortgage.

The remedy for the plaintiff is upon the contract, and upon that, if violated, the law will give him ample indemnity. *Plaintiff nonsuit.*

KENT, DICKERSON, BARROWS and DANFORTH, JJ., concurred.