FAIRFIELD BRIDGE COMPANY vs. JOSEPH NYE.

*Contract. Sale—delivery—consideration. Mortgage. Pledge. Replevin of property mortgaged or pledged.*

On Nov. 13, 1869, A. contracted with the plaintiff bridge company, to furnish materials and build two granite piers of Hallowell granite, according to certain specifications, for fourteen dollars per cubic yard, five hundred dollars to be paid down, and five hundred dollars monthly, until the piers shall be completed and accepted, when the balance is to be paid, and all to be completed before the following spring freshets. Thereupon A. procured the blocks of granite, hauled them upon land leased by him near the contemplated location of the bridge, and commenced dressing and fashioning them. The plaintiffs duly paid the first four installments, and before the next one became due, and before any of the granite was placed in the piers, it was attached by A.'s creditor. In replevin by the bridge company, *Held*, That the plaintiffs acquired no title by virtue of the contract and the payments made, or any rights or interest in the granite as against the attaching creditor.

Also *held*, That the bridge company could not hold the stone as against the attaching creditor by virtue of an absolute bill of sale thereof from A. to the company, the consideration of which was the four payments made in accordance with the terms of the original contract.

As between a vendee of a quantity of granite and an attaching creditor of the vendor, an actual or symbolical delivery is necessary.

To render a mortgage or pledge of personal property valid as against attaching creditors of the mortgagor or pledgor, there must be, at least, a distinct and specific condition that can be clearly stated, on performance of which the property would be released.

By virtue of R. S., c. 81, § 42, a mortgagee or pledgee of property attached, cannot replevy it from the attaching officer, until he has given the officer 'at least forty-eight hours' written notice of the claim and the true amount thereof.'

ON REPORT.

REPLEVIN. Writ dated Aug. 2, 1870.

Plea, general issue, and brief statement that the stones were the property of one Andrews, and that the defendant held them as an officer by virtue of an attachment made Feb. 23, 1870, on a writ *Joseph R. Bodwell* v. *Ira Andrews.*

There was evidence tending to prove that on Feb. 15, 1870,

Andrews called on one Totman, at Fairfield (director of the plaintiff company, and one of the persons designated to supervise the work), for his monthly pay for February; that as the water was rising, and stones could not be laid, he told Andrews the company must have some security for the money paid; that Andrews agreed to give it; that an absolute bill of all the stones (then mostly fitted and marked), was made in consideration of the sum of two thousand dollars to the bridge company, and upon its being executed by Andrews, Totman paid him the February installment of $500; that Andrews said he must have more money with which to settle with his men, and Totman paid him $190 more; that Andrews and Totman did not go out to the stone together after the execution of the bill of sale; that no actual delivery was made of the stone by Andrews to Totman or to any one else; that some of the employees of Andrews continued to work under Andrews' superintendent until the 17th, when they picked up their tools and quit.

The remaining facts appear in the opinion.

The full court to render judgment according to the law and the facts as they should find them.

*S. S. Brown*, for the plaintiffs.

Plaintiffs rely on written contract dated Nov. 13, 1869, and bill of sale dated Feb. 15, 1870. Symbolic or constructive delivery is sufficient for this kind of property. *Vining* v. *Gilbreth*, 39 Maine, 496; *Boynton* v. *Veazie*, 24 Maine, 286; *Ludwig* v. *Fuller*, 17 Maine, 162; Story on Sales, §§ 311, 311*a*, 312.

The parties intended the title should pass as soon as granite was fitted.

The intention of the parties must govern. 2 Parsons on Contracts, § 3. The title to the granite passed when the monthly payments were made. Story on Sales, § 234; *Woods* v. *Russell*, 5 Barn. and Ald. 942. The work was done under the superintendence of Mr. Totman, he exercising the right to accept or reject. His acceptance and payment were sufficient to pass the title, as to all granite marked and set aside for the piers. The completion of

the granite to the acceptance of Totman in the proportions contemplated by the contract was a condition precedent to the payments.

The bill of sale of Feb. 15th, was designed, either as an independent transaction, or as supplementary to the contract of Nov. 13th. As an independent contract, it was sufficient in form to convey the property, if the parties to it designed it to have that effect. The consideration of this bill of sale was the $500 paid at its date, and the abandonment of the original contract. Though designed for a security only, it needed no recording. *Knight* v. *Nichols*, 34 Maine, 208.

If the bill of sale of the date of Feb. 15th, was designed as a supplement to the original contract, its effect is the same as a statement in the original contract, declaring that all the granite prepared at the date of this bill of sale should be the property of the corporation.

No delivery under either contract was necessary, as Bodwell, the attaching creditor in the trustee writ, had knowledge of the facts before he made his attachment. The rights of these parties can be fully and best settled under the trustee writ. The officer is affected by notice to the attaching creditor. *Ludwig* v. *Fuller*, 17 Maine, 162. Amendment of officer's return on the trustee writ, at *nisi prius*, was unauthorized and void. Howe's Prac., 364; 9 Pick. 160; 3 Greenleaf, 260; *Fairfield* v. *Paine*, 23 Maine, 498.

*J. S. Abbott*, on same side, cited, on the point of delivery, *Shumway* v. *Rutter*, 5 Pick. 56; *Tuxworth* v. *Moore*, 9 Pick. 347.

*J. Baker*, for the defendant.

KENT, J. This case is replevin for a quantity of granite stones, and is submitted to the court to determine the law and facts, and thereupon to render judgment. The issue is on the title of the plaintiffs to the stones in question. If that title is not shown, the judgment must be for the defendant.

Both parties claim title or right under Ira Andrews. The defendant by an attachment of the stones as the property of Andrews. The plaintiffs on several grounds to be hereafter stated.

The first ground assumed by the plaintiffs is based upon a written contract between Andrews and themselves. By that contract, Andrews, in consideration of payments, as afterwards specified, promises and agrees with the company, ' to build two granite piers of Hallowell granite, of first class masonry, of the form and dimensions particularly specified. The piers to be commenced as soon as the stage of water will admit, and be completed during the winter, or before the spring freshets. The work to be carried up under the supervision of persons named.

The company, on their part, agreed to pay Andrews the sum of fourteen dollars per cubic yard, the first installment of five hundred dollars to be paid on the 13th of November, which was the date of the contract, and five hundred dollars monthly, until the piers are completed and accepted, when the whole shall be paid.

The first five hundred dollars were paid on the day first named, and another like sum on the 13th of December, and another like sum on the 13th of January, and another like sum on the 15th of February,—all in accordance with the terms of the contract.

Andrews proceeded on his part to commence the execution of the contract, and obtained, on his own credit, a quantity of Hallowell granite, and had it brought to Kendall's Mills and deposited near the railroad, on ground obtained for that purpose by him, from the railroad corporation.

He then hired men to dress and prepare the stones, on that spot, ready to be put in their places in the piers. No part of the stones were placed in the piers, but they remained on the land when attached by the defendant.

It is contended by the plaintiffs, that by virtue of the contract and the payments made, they acquired a title to the stones, thus in process of preparation, or a right or interest in them, which would prevent a legal attachment by a creditor of Andrews. How far such a right or title might be sustained, if the stones had actually been placed in the pier or piers, and had become a part of the promised erections, it is unnecessary to decide.

The contract was an entire and single one, viz., to erect and build

two piers of Hallowell granite. The contractors must furnish and fashion the materials and put them in place, and when he had done so, his contract was performed.

He could not call upon the company to purchase or become surety for the price of the Hallowell granite. The contract does not give any lien or property in the stones as the work progressed.

If a man contracts with a builder to erect for him a house on his land, at a fixed price, and according to certain specifications, and further agrees to pay money to him at specified times, some of which are clearly before the commencement of the work, and there are no other terms or conditions, the man, for whom the house is to be built, does not acquire a title to the lumber which the contractor may purchase and take to his shop to be prepared and fitted for the house.

We think the first proposition cannot be sustained.

The plaintiffs, however, next produce an absolute bill of sale from Andrews to them, dated the 15th of February, 1870, the day when the last payment of five hundred dollars was made. The consideration named is two thousand dollars, paid by the company, and the bill purports to convey to the company 'all the granite stones, piled near the depot, which I have fitted for the new piers of said bridge company, to have and to hold forever.'

This is an absolute bill of sale, with no conditions or qualifications.

If it is to be viewed as an absolute sale, the defendant objects that it is void as against the attaching creditor.

1. Because there was no consideration for it. It was declared early in this State, in the case of *Gorham* v. *Herrick*, 2 Maine, 98, that a 'defendant, representing a creditor, has a right to require that such sale and transfer should appear to have been made *bona fide*, and for a good and sufficient consideration. The same doctrine is found in *Richardson* v. *Kimball*, 28 Maine, 470; *Whitaker* v. *Sumner*, 20 Pick. 404.

Now what consideration was there for this bill of sale. The evidence declares none, except it be found in the payments that had

Fairfield Bridge Company *v.* Nye.

been made, which were the two thousand dollars paid in the four installments. But those payments were made in strict accordance with the terms of the agreement. The plaintiffs saw fit to agree to make those payments on certain days named, without making them dependent at all upon the amount of work done. Indeed the first payment was to be made, and was made, on the day the contract was executed.

The contract had not been abandoned at the time of this absolute sale. The order for one hundred and ninety dollars was not given until after the bill of sale, and was no part of the consideration, as appears by the evidence. It was not drawn, as the other orders were, upon the treasurer, by name of his office, but seems to be a mere memorandum to show a subsequent advance toward the next installment. It is difficult to find any legal consideration for such an absolute bill of sale of property, worth, according to the statements of witnesses, about thirty-eight hundred dollars. Andrews owed nothing to the company at that time. He received only what was legally due to him. According to the terms of the bill of sale, it was not taken as security for the performance of the contract, or for any purpose of security.

2. But if the sale does not fail for want of consideration, there does not appear to have been any delivery, either actual or symbolical. Andrews did not go to or near to the stones, after signing the bill of sale, with any purpose to make delivery; but departed on the train from the town immediately after signing the bill of sale. The stones remained in the possession or charge of his foreman for some days. No possession was taken by the vendees, nor any act of ownership exercised before attachment. A delivery of some kind is essential, as between vendees and subsequent purchasers or attaching creditors. The delivery must be by some act, express or symbolical, by which the possession is transferred to the buyer.

No sufficient notice is proved, or actual possession acquired, before the attachment.

If regarded as an absolute bill of sale, we cannot find sufficient evidence of the delivery required by law.

It is finally contended, that if the sale cannot be sustained, if viewed as an absolute one, yet that under the facts proved, it may be sustained, as a mortgage or pledge, or in some form as security.

There are indications, and perhaps sufficient evidence, that the real intention of the parties was not an absolute sale, irrespective of any future connection between the parties, but rather that the contract remaining in force and not abandoned, the sale should stand so as in some form to operate as security.

But it is difficult, if not impossible, to say, upon the evidence, that there was any definite and distinct agreement as to what was to be secured. If we felt at liberty to ingraft upon the bill of sale conditions of defeasance, we should be at a loss to determine what they are, or should be. There seems to have been some confused and indefinite idea of 'indemnity for the past, and security for the future,'—for the money paid under and according to the terms of the contract, and security for the performance in the future. But we can find no specific and exact matter or thing which could be stated as the condition of a mortgage or pledge. In order to have a mortgage or pledge good as against attaching creditors, or subsequent purchasers, there must be, at least, a distinct and specific condition that can be clearly stated and understood, and which, being performed, the property would be released.

It must be such a demand or claim, as can be stated, under the requirements of R. S., c. 81, §§ 41, 42, 43, so definitely that the sum to be paid by the attaching officer is fixed and certain.

We have thus considered the case upon the several points raised, and argued on the merits, because we suppose that the parties desired such consideration. But on the last proposition, which regards the sale in the light of a mortgage or pledge, there seems to be an insuperable objection to the maintenance of this action against the attaching officer, in the provisions of R. S., c. 81, § 42. That section provides that 'when personal property, attached on a writ, or seized on execution, is claimed by virtue of such mortgage, pledge, or lien, the claimant shall not bring an action against the

attaching officer therefor, until he has given him at least forty-eight hours' written notice of his claim, and the true amount thereof; and the officer or creditor may, within that time, discharge the claim by paying or tendering the amount due thereon, or restore the property.'

The object of this provision is manifest, and the legislature has seen fit to make it a condition precedent to the bringing of an action.

We find no evidence that such a notice was given in this case. It would seem to be a conclusive objection, so far as relates to this transaction received as a mortgage or pledge or lien.

The result is, that judgment must be given for the defendant, and for a return. The parties can probably adjust all questions as to amounts, without further action by the court. But the judgment must be  *Judgment for the defendant, and for a return of the property replevied and for costs, and for damages for detention, to be assessed and determined at nisi prius term, where case is pending.*

APPLETON, C. J.; WALTON, DICKERSON, BARROWS, and DANFORTH, JJ., concurred.