F. W. WUNDENBERG, Receiver, *vs.* JAMES CAMPBELL.

SUBMISSION.

HEARING, JANUARY 3, 1893.    DECISION, FEBRUARY 25, 1893.

JUDD, C.J., BICKERTON AND DOLE, JJ.

(By agreement of parties and counsel Mr. Dole joins in this decision, though he had resigned after argument and before judgment.)

The statute (1864) to facilitate the recovery of rents does not give the landlord a lien for rent in arrears upon the goods of the tenant from the commencement of the tenancy. It gives him the right to distrain the goods of the tenant upon the demised premises, which lien attaches only from the time of the levy.

The right of distress is not defeated by a mortgage of the goods by a tenant, the mortgagor remaining in possession.

The appointment of a receiver of mortgaged property does not change the title of the property. Property rightfully in the hands of a receiver is not the subject of a landford's distress for rent. The landlord should apply to the Court for an order to the receiver to pay the rent or to be allowed to proceed by distress.

Property in one tenement is not liable to be distrained upon for rent due on another tenement under another lease.

The relation of landlord and tenant must exist between the parties to give a right of distress.

A tenancy by parol from month to month is a contract for a " term " within the statute above considered.

## Opinion of the Court, by Judd, C.J.

This matter comes before us on a submission under the Code of an agreed statement of facts, as follows:

To the Honorable, the Justices of the Supreme Court:

The petition of the said plaintiff and defendant respectfully shows that they have agreed and hereby do agree upon the statement hereunder written, and that a real controversy depends thereon, and that they respectfully pray that Your Honors do hear and determine the question at issue therein and render judgment thereon.

The facts upon which the said controversy depends are as follows, viz. :

On the first day of March, A. D. 1892, C. E. Williams gave to John H. Wood a mortgage, herewith filed, to secure the indebtedness therein mentioned.

On the eleventh day of October last, Alfred S. Hartwell and Henry Waterhouse, executors of the will of said John H. Wood, then deceased, brought a bill of complaint for the foreclosure of said mortgage and for the appointment of a receiver, and thereupon, Mr. Justice Bickerton, at chambers, before whom the said bill was heard, made an order appointing said F. W. Wundenberg such receiver, and ordering him to sell off said mortgaged property, as appears by said order which, together with said bill of complaint and the record of proceedings thereon, is here referred to as part of the agreed facts of this submission.

The said F. W. Wundenberg, as such receiver, thereupon took possession of said mortgaged property, still retaining possession thereof, except that he has since been selling, and is now selling the same at retail.

That the said C. E. Williams held a lease hereto appended and made part hereof, whereby said James Campbell leased to him certain premises therein described for the annual rental of three thousand dollars, payable quarterly. The term of said lease expired September 30, A. D. 1887, and was renewed

by parol for another term of five years which expired September 30, A. D. 1892.

The said C. E. Williams subleased all of said premises except the "new store and building on Hotel street adjoining property of Rev. S. C. Damon," and since the 30th day of September last the sublessees have leased the same directly of said James Campbell.

There is owing to said lessor by said C. E. Williams, seven hundred and fifty dollars rent on said lease for the quarter ending September 30th last, and also two hundred and seventy dollars for rent for the same quarter of another Fort street store occupied by him under parol lease at ninety dollars a month, making in all one thousand and twenty dollars.

That the said mortgaged property taken as aforesaid by said receiver was, and so much thereof as is not sold as aforesaid, now is stored in said Fort street store not under said written lease and in said Hotel street store.

That since the receiver took possession as aforesaid, he has paid the said lessor monthly rent of ninety dollars for said Fort street store, and forty dollars for said Hotel street store, occupied as subtenant of Lewis & Co., tenants of said James Campbell.

That all of the goods which the said lessor claims as hereinafter stated were sold to the said C. E. Williams by the said John H. Wood on the first day of March, A. D. 1892, and the said mortgage was given to secure payment of the purchase money thereof.

That said James Campbell is to be considered as having against the protest and without the consent of said receiver, this day distrained and taken from said Fort street store, not in said written lease, and from said Hotel street store, a sufficient amount of the furniture therein, the same having been in and upon the same premises at the time of the taking possession thereof by the receiver and being part of the mortgaged premises, to enable the said lessor out of the proceeds thereof when sold as provided by law for property distrained for rent, to pay himself the said one thousand and twenty dol-

lars rent, and that the said receiver is to be considered as having brought replevin against said James Campbell for the said furniture distrained as aforesaid and as having replevied the same.

The question of law submitted on the foregoing statement is whether the said James Campbell is legally entitled to distrain as aforesaid on said mortgaged furniture for payment of said rent of one thousand and twenty dollars.

It is agreed that if the said James Campbell is so entitled, the said receiver will pay him the said sum of one thousand and twenty dollars as rent aforesaid, and if he is not so entitled, that the said James Campbell will renounce all claim of right of distraining on said property for said rent.

The first question raised is whether our statute "To Facilitate the Recovery of Rents," gives a lien to the landlord from the commencement of the tenancy. The statute (passed in 1864) reads, "Whenever any tenant or subtenant of any lands, tenements or premises held by him, either by written or parol contract, for any term, at a rent stipulated by such contract, shall make default in payment of rent, and allow the same to become in arrears, it shall be lawful for the landlord, or party entitled to such rent, to enter upon and into such lands, tenements or premises, in respect to which such rent shall be in arrears, without any legal process, and there to distrain and remove to a place of safe custody, any goods and chattels of such defaulting tenant, found on such premises, to satisfy such arrears," &c., &c.

It will be seen, that this section of the statute, unlike many statutes in other countries, does not establish a specific lien in favor of the landlord. But the argument is made by defendant's counsel that there is a lien by implication in favor of the landlord because Section 2 of the Act prescribes that no goods of the tenant shall be liable to be taken *on execution* until the party who has the execution shall pay the rent, with the proviso that the landlord "shall not have any lien or claim" for rent accruing during four weekly or monthly terms. The argument is, that if no lien attaches, an

execution upon a judgment would have priority over all claims except those secured by mortgage; and the converse would be true, if the statute gives a lien from the beginning of the tenancy it would have precedence over mortgages, judgments, &c., attaching subsequent to the commencement of the tenancy.

We consider that the use of the words "or lien" as a paraphrase for the "claim" of the landlord does not create a lien. Jones on Liens, Sec. 540, says, "The right of distraint may in some sense be called a lien, though it differs essentially from the landlord's lien created by statute. One essential difference is that by the common law process no fixed lien upon the property existed until the property was actually seized or levied upon; while by statute a lien is ordinarily imposed upon the property from the beginning of the tenancy."

We understand that Section 1 of our statute merely enacts the common law right of the landlord to distrain for rent, limiting the right to the goods of the tenant on the premises, and Section 2 is substantially the 8th Anne (A. D. 1710) which gives the claim of the landlord priority over a general execution. Were it not for Section 2, as the lien of a distress dates only from the time of its levy, a prior execution would have priority. Jones on Liens, Sec. 555. Such was the holding of this Court in *Bankruptcy of On Chong*, 7 Haw. 376. "A landlord's claim for rent is not a lien on a bankrupt's estate and has no priority over ordinary debts." In the case of On Chong, if the lien in favor of the landlord existed from the beginning of the tenancy, and bankruptcy intervened, the assignee would take the property subject to the lien. Jones, Liens, Sec. 569.

In *Receivers of the Union Iron Works Co. vs. Widemann*, decided by the Chief Justice March 3d, 1892, it was held that the statute under consideration did not create a lien for rent upon the goods of the tenant from the beginning of the tenancy, and so the right of distress of a landlord was liable to be defeated by a mortgagee who takes actual possession

of the goods before the distraint is made. In that case this was not done, and the landlord took and removed the goods before the trustees under the mortgage took possession.

It is urged upon us by defendant's counsel that as a bill for foreclosure had been filed and a receiver appointed who was in possession, under Section 2 of the Act the rent in arrears must be paid before the goods can be sold under the decree of foreclosure as if it were an "execution." An inspection of the papers in the matter of the appointment of the receiver shows that at the date when by the subsmission the distraint was made, no decree of sale under the foreclosure had been made. The English cases containing the statute of 8 Anne, which is similar to our Section 2 of the Act, define an execution to be one founded upon a judgment. *Lee vs. Lopes*, 15 East, 231 ; *Brandling vs. Barrington*, 6 B. & C. 467.

It is not for us to inquire upon what grounds the appointment of a receiver was asked for; it is sufficient for us to take the facts as they appear in the submission. He went into possession. The property was in *custodia legis*. The possession of the receiver is that of the Court which appointed him, of which he is the ministerial officer.

Beach on Receivers, Sec. 221.

Taylor, Landlord & Tenant, Sec. 594.

"Property rightfully in the hands of a receiver is in the custody of the Court and cannot be distrained upon without permission of the Court." Jones, Liens, Sec. 591.

But he is not without remedy. Chancellor Wallworth states the law in *Martin vs. Black*, 9 Paige, 643, as follows : "Where the goods are remaining on the demised premises at the time the landlord attempts to exercise his right to distrain, and the only impediment to the exercise of the right is the possession of the Court, by the receiver, it appears to be the settled practice in England to order the receiver to pay the arrears of rent out of the proceeds of the property, or to permit the landlord to proceed with his distress notwithstanding the receivership." Now, if instead

of this amicable submission, the landlord Campbell had applied to the Court for an order on the receiver to pay the rent or for leave to proceed by distress, could this have been refused? There was nothing in the way of this except, perhaps, the mortgage to J. H. Wood. By the practice of this Court a chattel mortgage, the mortgagor remaining in possession, does not transfer the title to the mortgagee—it merely gives the mortgagee security upon the property. Therefore Williams, the mortgagor, had an interest in the property. We do not find authority for the position that a recorded chattel mortgage by a tenant would defeat the landlord's right to distrain for rent upon the chattels of the tenant still in his possession upon the demised premises, nor do we understand that the appointment of the receiver transferred the title in the goods to him. "The general proposition is that the possession of the receiver is that of all the parties to the suit according to their titles." Lord Hargreave, cited in Beech, Rec., Sec. 223. "The object of appointing a receiver is not to divest a rightful owner of the title to the property involved, but to place it in the hands of an indifferent person to preserve it pending litigation and subject to the final order of the Court." Beech, Sec. 221.

As the submission raises the question whether Mr. Campbell was legally entitled to distrain for his rent, we do not consider that it is embarrassed by the fact that he did not apply to the Court for an order. That method would have raised the same question that is now raised.

But it is urged that the landlord could not distrain for the rent due on the Fort street store which was a parol tenancy, since the statute requires that a "term" be contracted for. The statute allows a "written or parol contract for any term, at a rent stipulated by such contract."

The submission recites that "there is owing two hundred and seventy dollars for rent for the same quarter (ending September 30th, 1892,) of another Fort street store occupied by him under parol lease at ninety dollars a month." The authorities say that there must be an actual demise at a

fixed rent; the relation of landlord and tenant must actually exist to sustain a distress. Taylor, L. & T., Sec. 563. The rent was fixed at $90 per month and we infer that it was payable quarterly. If so it was a demise for a fixed term, that is, for three months at a time. But if the tenancy was only from month to month it would be still a fixed term and would sustain the right of distress.

The goods were supposed to be taken from the Fort street store and the Hotel street store. The submission sets forth that the distraint must be deemed to have been made on the 29th December last, the date of the submission. But Williams on the 1st October ceased to be Campbell's tenant of the Hotel street store (adjoining Dr. Damon's building) and Lewis & Co. took a lease from Campbell of this building on that date. Although Williams' goods were still in this store, by an arrangement with Lewis & Co., still, as Williams was not on the 29th December Campbell's tenant, the goods on the premises were not liable to be distrained for rent due Campbell. This part of the distraint is therefore not good. The goods in one tenement cannot be taken for rent due on another tenement on another lease. The goods taken from the Fort street store are only answerable for the rent due upon it, $270, and are not liable for the rent due on the other tenements.

Judgment for James Campbell, defendant, for $270 and costs.

*A. S. Hartwell,* for plaintiff.
*Cecil Brown,* for defendant.