N. FRANKHOUSER, *as Sheriff of Osage County*, v. R. E. FISHER *et al.*

1. INSTRUMENT, *Held to be a Chattel Mortgage.* The instrument under which the plaintiffs claimed the corn in controversy in this action, being given to secure the payment of money, is *held* to be a chattel mortgage.

2. ———— *Failure to File—No Change of Possession.* Where a mortgagee neglects to file his mortgage or a copy thereof in the office of the register of deeds, but claims a delivery of the property to him, he must show an actual and continued change of possession of the thing mortgaged; and, where it appears that no actual change of possession was had, the mortgage is absolutely void as against creditors of the mortgagor.

*Error from Osage District Court.*

ACTION by *Fisher* and another against *Frankhouser*, as sheriff, to recover certain corn. Judgment for plaintiffs. Defendant comes to this court. The opinion states the facts.

*Pleasant & Pleasant*, for plaintiff in error.

*L. T. Wilson*, for defendants in error.

The opinion of the court was delivered by

ALLEN, J.: Fisher & Enderton brought this action against Frankhouser, who was the sheriff of Osage county, to recover a crib of corn stored on the premises occupied by W. L. Neally. The corn had been raised by Neally. Before it was gathered, he executed and delivered to the plaintiff an instrument in writing, as follows:

"MELVERN, KAS., October 24, 1889.

"In consideration of $300 to me paid, I hereby sell to Fisher & Enderton 2,000 bushels of corn *now standing in the field* on my farm in Osage county, Kansas, N. ½ of Sec. 36, 18, 15; and I agree to crib said corn on the same premises for the said Fisher & Enderton. It is also agreed that said corn shall be marketed by Fisher & Enderton at any time after the 1st day of May, 1890, or before that time with my consent, and if the market price be more than 15 cents per bushel, the overplus, after deducting all costs of removal and

10 per cent. interest to the date of sale, shall be paid to me by a credit on my note for $780.80 to Fisher & Enderton.

W. L. NEALLY."

This instrument was never filed for record, but it is claimed that the corn was gathered and cribbed as therein agreed, and delivered in the crib to the plaintiffs. The trial court correctly held that this instrument was a chattel mortgage. The main question for our consideration is, whether the evidence shows a delivery of the corn thereunder. S. B. Enderton testified to the execution and delivery of the chattel mortgage, copied above, which was termed by him a bill of sale, and was then asked:

"Q. Now, Mr. Enderton, you may state what you did after the execution of that instrument. What was done by you in regard to the possession of the corn? A. Well, about a month after this bill of sale was delivered, Mr. Neally came in, and told me my corn was in the crib, and I told him as soon as I had leisure I would go up and measure it; and in a few days, when I was there, he showed me a crib of corn, and told me his son Jay had a third interest in it, and that they had divided, and Jay took the north third of the corn, and he turned the corn over to me, and I stepped the crib off and estimated the height of it."

On cross-examination he was asked:

"Q. Very well; what control had you, or what did you ever do with this corn, except to see it and estimate how much there was of it? A. Why, I went to take possession of it.

"Q. Well, did you take it away? A. No, sir.

"Q. Did you take any away? A. No, sir; I just made an estimate of it.

"Q. Did you go in the crib? A. No, sir; I could not get in.

"Q. Then the only thing you did was to go and talk to Mr. Neally about it, and make an estimate of the amount of corn in the crib, and go back home again? A. Why, yes sir; I did not take any corn away with me."

W. L. Nealley, also called as a witness for the plaintiff, testified as follows:

"Q. After you cribbed it, you say Mr. Enderton came there? A. Yes, sir.

"Q. Now, what did you do when he was there? A. I showed him the corn and the division.

"Q. What did you say about it? A. I told him the north part was my share.

"Q. What did you say to him about it? A. I told him he could have it.

"Q. That he could have it? A. Yes, sir.

"Q. Did you show him or did you state to him anything about any division between one part of the crib and another? A. I think I did.

"Q. What did you say? A. I told him that was the division between myself and son.

"Q. Now, I will ask you if either you or he stated to each other anything about who was to have the control of that corn from that time on? A. Why, Mr. Enderton.

"Q. Well, what was said? A. I supposed of course that he was the owner of the corn.

"Q. I am talking about if anything was said between either one of you as to who was to control the corn from that on? A. I think not at that time.

"Q. Was there at any other time? A. I am not positive whether there was or not."

These were the only witnesses testifying in the case. The court held that a sufficient delivery was shown, and rendered judgment for the plaintiffs. Section 9 of chapter 68 of the General Statutes of 1889 provides that

" Every mortgage, or conveyance intended to operate as a mortgage, of personal property, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be forthwith deposited in the office of the register of deeds, in the county where the property shall then be situated, or, if the mortgagor be a resident of this state, then of the county of which he shall at the time be a resident."

The statute, it will be seen, requires an actual and continued change of possession. Does this evidence show it? The corn was placed in the crib by Neally, on his farm.

There it remained after the conversation with Enderton, and until levied on by the sheriff, in precisely the same condition, so far as the evidence shows, as when placed there. Neally and Enderton looked at it, estimated the quantity, and talked about it, but did absolutely nothing to make any physical change in its condition, or in the dominion of the parties over it. Enderton did not take physical possession of any part of the corn, of the crib, or even of anything giving him exclusive access to it. The corn still remained on the farm of the mortgagor, to all appearances and, in fact, as completely in the actual possession of the mortgagor as it was before Enderton came there. As was well said by Mr. Justice VALENTINE, in *Swiggett v. Dodson*, 38 Kas. 702, the statute means what it says. It requires actual and continued change of possession. The mere use of a formula of words, which might, under some circumstances, amount to a delivery between buyer and seller, will not fulfill the requirements of the statute.

It is, perhaps, somewhat difficult to lay down a rule which would apply to all cases of the delivery of ponderous articles, not easily moved. There must, however, be a change of control over the property discernible in some manner by third parties. (*Savings Bank v. Sargent*, 20 Kas. 576; *Throop v. Maiden*, 52 id. 258; *Tootle v. Rice*, 53 id. 576.)

We are clearly of the opinion that the evidence in this case fails to show a delivery. The judgment is therefore reversed, and a new trial ordered.

All the Justices concurring.