## TERRITORY *v.* MURAKAMI TSUNEKICHI.

## No. 1025.

RESERVED QUESTIONS FROM CIRCUIT COURT, FOURTH CIRCUIT.

HON. C. K. QUINN, JUDGE.

ARGUED JULY 3, 1917.                    DECIDED JULY 13, 1917.

ROBERTSON, C.J., QUARLES AND COKE, JJ.

CHATTEL MORTGAGES—*definition.*

A chattel mortgage is a transfer of the title, or right to acquire title, to personal property as security for the payment of money, or performance of some other act, upon condition that if the transferrer performs the specified act the title shall revest in him. The right to terminate the transferee's interest is a fundamental characteristic.

SAME—*instrument examined and held to be an executory contract and not a mortgage.*

A planter agreed in writing to sell such sugar cane as he might raise upon his land during two years to a plantation. The plantation advanced money and agreed to make further advances upon the security of the crops and the indenture, also to

purchase the cane and pay for the same at a specified price per ton of sugar which it would manufacture from the cane based upon the price for the time being of ninety-six degree polarization sugar in New York City. The plantation was given the right to deduct the amount of advances from the purchase price, and it was agreed that in case of default on the part of the planter the plantation should have the right to cancel the agreement or enter upon the land and take possession of the growing crops, if any, and harvest the same. And it was provided that the agreement should continue in force for the full period notwithstanding the payment by the planter of all indebtedness. Held, that the instrument was not a mortgage, its whole tenor being against the idea of a transfer of the title, or the right to acquire title, to the crops of cane as security for the performance of a condition which, if performed, would divest the transferee's interest therein.

OPINION OF THE COURT BY ROBERTSON, C.J.

The defendant was charged under five counts with having unlawfully attempted to remove certain sugar cane which was growing upon Lot No. 7, Kaiwiki Homesteads, District of South Hilo, County of Hawaii, with unlawfully removing the same, with attempting to aid and abet, and with aiding, abetting and assenting to the removal of the same by the Kaiwiki Milling Company, Limited, with fraudulent intent to place said sugar cane beyond the control of the Hilo Sugar Company, the mortgagee thereof, contrary to the provisions of section 3998 of the Revised Laws.

Upon the trial the prosecution had put in evidence an instrument executed on the 22d day of July, 1915, by the defendant and the Hilo Sugar Co., which the prosecution claimed, and the defense denied, was a mortgage of the sugar cane to be planted by the defendant on his premises at Kaiwiki; also a bill of sale of the same cane by the defendant to the Kaiwiki Milling Co., Ltd., dated the 30th day of August, 1915. And evidence was introduced show-

ing that on or about the 12th day of May, 1917, the Kaiwiki Milling Co., with the consent of the defendant and against the expressed wishes of the Hilo Sugar Co., cut and removed to its mill and beyond the control of the Hilo Sugar Co. about seventy-five tons of said cane. The prosecution having rested the defendant moved that the jury be instructed to return a verdict of acquittal on the ground that the instrument of July 22, 1915, was not a chattel mortgage within the meaning of R. L. 1915, Sec. 3998, and the offense charged had not been proven. Thereupon the court reserved for the consideration of this court the questions whether the said instrument was a mortgage, and whether the defendant's motion for a directed verdict should be granted. The material portions of the agreement are as follows:

"This agreement, made this 22nd day of July 1915 by and between Murakami Tsunekichi, party of the first part, hereinafter called the Planter (and if the Planter consists of more than one person this agreement and all covenants binding on the Planter are both joint and several), and Hilo Sugar Company a corporation, party of the second part, hereinafter called the Plantation, Witnesseth:

"That Whereas the Planter proposes to plant and cultivate sugar cane during the term hereinafter specified upon certain lands situate in the District of Hilo, Island and Territory of Hawaii, thus described:

"Lot No. 7 Kaiwiki Homesteads,

"(7 Acres Caledonia Plant Cane, Crop 1917)

"And Whereas the Planter has agreed to sell and deliver to the Plantation all crops of cane which may be grown and matured upon said lands during said term, and the Plantation is willing to make certain advances to enable the Planter to plant, cultivate and harvest such cane, upon the security of such crops and of this indenture:

"Now Therefore, in consideration of the sum of Fifty Three 15/100 ($53.15) Dollars to the Planter loaned and advanced by the Plantation, the receipt whereof is hereby acknowledged, and in consideration of the agreements of

the Plantation hereinafter contained, and in further consideration of such loans and advances as at any time may be made by the Plantation to the Planter (whether in cash or in materials furnished or services rendered) for the purpose of assisting him to plant, cultivate and/or harvest such sugar cane, or otherwise under the security of this indenture, the Planter does hereby agree to sell, assign, transfer and deliver, and does hereby sell, assign, transfer and deliver to the Plantation all sound sugar cane (free from trash, tops, moisture, dirt or other refuse, and excluding all dry and sour cane), which may mature upon said lands during the term of two years from 22nd day of July 1915;

"To Have and To Hold unto said Plantation, its successors and assigns, forever.

"And for said consideration the Planter does hereby covenant and agree with the Plantation that he will pay to the Plantation, upon demand, said sum now loaned and advanced and all other and further sums which may be loaned and advanced or chargeable to him by the Plantation hereunder, together with interest thereon at the rate of eight per cent. per annum; and will well and truly pay all taxes, assessments and all other charges whatsoever, whether laid upon said crops or lands or otherwise laid, the non-payment of which might be prejudicial to the security or rights of the Plantation hereunder, and will do and perform every other matter or thing requisite to maintain the security of the Plantation hereunder; and will not, without the written consent of the Plantation, sell, assign or transfer by way of mortgage or otherwise to any person other than the Plantation said crops, or any part thereof, or interest therein, during the term hereof; and, when so required by the Plantation, will cut, and deliver to the Plantation at the flumes of the Plantation, on said lands, or at such other place or places as may be mutually agreed upon, all sound sugar cane (free from trash, tops, moisture, dirt, or other refuse, and excluding dry and sour cane) grown and matured as aforesaid during said term; and that all advances and all reasonable charges for materials furnished or services performed hereunder by the Plantation, for the account of the Planter, with interest thereon as aforesaid, shall be secured hereby and shall be a charge

against the purchase price of said cane, and deductible by the Plantation before any payments of such price are made to the Planter.

"And for said consideration the Planter does hereby grant to the Plantation, during said term, free of charge, all such rights of way over and across said lands as may be necessary, to take off the cane grown on said lands or on any other lands so located that such rights of way are necessary for taking off cane therefrom."

Then follow certain provisions in regard to the furnishing to the planter of seed cane for planting and flumes for taking off the crop, concerning the quality of the cane, and the agreement of the plantation to purchase the cane and specifying the price to be paid therefor based upon the price for the time being of ninety-six degree polarization sugar in New York City. And then follow these paragraphs:

"But in case of any default on the part of the Planter to well and truly pay, upon demand, any sum or sums advanced or chargeable to him hereunder, or otherwise to well and truly perform any or all the covenants and agreements by the Planter made herein, then the Plantation may at its election cancel this agreement, and recover from the Planter all such sums already advanced or chargeable to him hereunder, with interest as aforesaid, or may enter upon so much of the above described lands as may be cultivated in cane and take full possession of the same and of the crops growing thereon, and so long as may be necessary to reimburse itself in such sum or sums, not exceeding the remainder of the term hereof, may carry on, as though conducting its own business, the work of cultivating and harvesting such crops and any ratoon crops therefrom, charging to the Planter the full cost thereof, including labor, superintendence, materials and all such other proper costs, charges and advances, as it may deem reasonably necessary, with interest thereon as aforesaid—all of which shall be repayable under and secured by this indenture. All sugar manufactured from cane received or taken by the Plantation from such lands shall be credited to the Planter

at the prices aforesaid, and after all proper charges and deductions of every kind shall have first been made, the net balance, if any, remaining shall be made over to the Planter.

"Entry and operation by the Plantation as aforesaid shall not deprive the Plantation of the right to thereafter cancel this contract for any cause herein provided for, if it so elect.

"It is understood and agreed that payment at any time of all indebtedness of the Planter to the Plantation shall not operate as a cancellation of this agreement, but the same shall nevertheless continue in force during the full term herein specified.

"And it is mutually agreed that this indenture shall be binding upon and inure to the benefit of the parties hereto and their respective legal representatives and successors in interest."

On behalf of the prosecution it is contended that the instrument is of a two-fold character, viz., (1) a contract for the sale of the cane therein named, by the defendant to the Hilo Sugar Co., for a period of two years from and after the 22d day of July, 1915; and (2) a chattel mortgage securing (a) the repayment of $53.15, the amount therein acknowledged to have been received by the defendant, (b) future advances, if any, and (c) the performance of other covenants and conditions therein named to be performed by the defendant, including the covenant to sell cane to the Hilo Sugar Co. as set forth in said instrument. And counsel say that "An inspection of the instrument itself shows that it expressly purports to secure (a) and (b), and it was argued at the trial and is again urged in this court that said instrument should be construed to secure (c) as well. However, this last named contention as to (c) is in no way essential to the prosecution's case, for if the instrument sufficiently secures the repayment of $53.15, as set forth in (a), the prosecution will not have to rely upon the hypotheses set forth in (b) and (c)." In this

connection counsel lay emphasis upon the fact that the consideration was stated to be the sum loaned the planter and future advances to be made to him "under the security of this indenture," and that the planter agreed that all advances and all reasonable charges for materials and services, with interest thereon, "shall be secured hereby," and cite authority to the effect that a bill of sale of personal property declared to be made to secure borrowed money is a mortgage. But taking all the provisions of this instrument as expressing the entire transaction between the parties there will be found to be lacking any provision, express or inferable, giving the party of the first part the right to divest the title or claim of the party of the second part by performance of a condition, which is the fundamental characteristic of a mortgage. "A chattel mortgage may be defined as a transfer of the title to personal property, as security for the payment of money or performance of some other act and subject to the condition that, if the transferrer performs the specified act, title shall revest in him. There is some dissent from this definition in regard to whether title passes to the mortgagee, and many courts, influenced by the prevailing doctrine regarding real-estate mortgages, have held that legal title does not pass to the mortgagee but that he merely gets a lien." 6 Cyc. 985, 986. In this jurisdiction it has been held that title to the property does not pass to the mortgagee unless or until he takes possession of it. *Wundenberg* v. *Campbell,* 9 Haw. 203, 209; *Phillips* v. *McChesney,* 8 Haw. 289. The right to terminate the transferee's interest is essential to a mortgage. Jones on Chattel Mortgages, Secs. 8, 17; 11 A. & E. Enc. Law (2d ed.) 207; *Kahau* v. *Booth,* 10 Haw. 332; *Horton* v. *Hovater,* 66 So. (Ala.) 939; *Flanders* v. *Chamberlain,* 24 Mich. 305, 309; *Goddard* v. *Coe,* 55 Me. 385; *Fairfield Bridge Co.* v. *Nye,* 60 Me. 372, 378; *Weeks* v. *Baker,* 152 Mass. 20.

We regard the instrument in question as an executory contract which by its terms was to continue in force for the term of two years. The planter agreed to sell and deliver to the plantation all the sound sugar cane which he might raise and bring to maturity upon his land during that period. He did not bind himself to plant any cane, but only to sell to the plantation such cane as "may mature upon said lands during the term of two years." The plantation agreed to buy and pay for the cane at a specified price per ton of sugar which it would manufacture from the cane based upon New York quotations. The plantation also agreed to make advances which the planter agreed would be a charge against the purchase price of the cane and deductible therefrom. There was no clause of defeasance—no condition to be performed which would terminate the interest of the party of the second part— and none can be implied in face of the provision that the agreement should continue in force for the full term notwithstanding the payment by the planter of all indebtedness. The right of the plantation was not merely to have back the amount of money advanced, with interest, but the right to have the cane to manufacture into sugar with the opportunity of making a profit out of the process. What was referred to as "the security" of "such crops" and "of this indenture" was the right given the plantation to deduct the amount due from the planter from the purchase price of the cane and, in case of default on the part of the planter, to enter upon the land and cultivate and harvest the crops. No power of sale in the event of a default on the part of the planter to perform his agreements was given to the plantation. And in case of the failure of the party of the first part to carry out the contract the remedy of the party of the second part would not be by bill in equity to foreclose an equity of redemption, but to cancel the agreement or enter upon the land and take possession of

the crops growing thereon, if any, and harvest the same, as provided in the contract, or by an action at law for damages for breach of contract. The whole tenor of the instrument is against the idea of a transfer of the title, or a right to acquire title, to the crops of cane as security for the performance of a condition which, if performed, would divest the transferee's interest therein. We hold, therefore, that the instrument in question was not a mortgage.

We have examined the cases of *Minnesota Oil Co.* v. *Maginnis,* 32 Minn. 193, and *Frankhouser* v. *Fisher,* 54 Kan. 738, cited in the prosecution's brief. Neither of them is on all fours with the case at bar. The latter is clearly distinguishable, and in so far as the former may be inconsistent with the views herein expressed we do not agree with it.

The circuit court is advised that the charge was not sustained by the evidence, and that the defendant's motion for a directed verdict of acquittal ought to be granted.

*B. Knollenberg* (*W. H. Beers,* County Attorney of Hawaii, *Frear, Prosser, Anderson & Marx* and *C. F. Parsons* on the brief) for the Territory.

*J. W. Russell* for defendant.